# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| JOSEPH C. COXON, | ) | CASE NO. 1:06CV2910 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | |
| CITY OF MENTOR, et al., | ) | |
| | ) | **MEMORANDUM OPINION** |
| DEFENDANTS. | ) | **AND ORDER** |
| | ) | |

Before the Court is the defendants' motion for partial judgment on the pleadings under Fed.R.Civ.P. 12(c) (Doc. No. 14), plaintiff's memorandum in opposition (Doc. No. 15), and defendants' reply (Doc. No. 16). For the reasons discussed below, the motion is **GRANTED IN PART** and **DENIED IN PART**.

## I. BACKGROUND

On December 4, 2006, plaintiff initiated this action pursuant to 42 U.S.C. §§ 1983 and 1985 by filing his complaint against the City of Mentor, Law Director Richard Hennig, Assistant Law Director Joseph Szeman, Chief of Police Daniel Llewellyn, and Officers John Miller, Daniel Shaw and Phillip Croucher.[1] Plaintiff alleged that he had been deprived of his constitutional rights under the Fourth and Fourteenth Amendments to the U.S. Constitution by persons acting under color of state law and that the defendants had conspired to deprive him of his civil rights. He alleged that the City, in addition to the individual defendants, was liable for

---

[1] This case was originally assigned to Judge Christopher Boyko, but was reassigned on March 26, 2007. While the motion was pending, defendant Shaw moved to stay the case due to his military deployment to Iraq. On October 15, 2008, Shaw filed a notice of his return from service and, on October 16, 2008, the Court lifted the stay.

the deprivation of his rights. He also alleged the following state law claims: malicious prosecution, abuse of process, assault and battery, and gross negligence/reckless conduct.

All of plaintiff's claims are grounded in the same set of facts taken as true for purposes of this motion. He alleges that, on September 2, 2004, at approximately 3:40 p.m., he collided head on with a vehicle that was stopped in the center "turn only" lane on Mentor Avenue in the City of Mentor. Officer Shaw was first on the scene and, although finding plaintiff in an unconscious or semi-conscious state, he did not contact emergency medical personnel. When Officer Miller subsequently arrived on the scene, he, too, did not contact emergency personnel but instead forcibly removed plaintiff from the vehicle, at one point even drawing his weapon and pointing it at plaintiff. Plaintiff alleges that these officers, along with Officer Croucher, used force that was excessive, reckless and unlawful.

Eventually, other officers at the scene determined that plaintiff was in need of medical attention and had him removed to Lake West Hospital, where the treating physician informed the officers that plaintiff's behavior was attributable to hypoglycemia brought on by diabetes. A urinalysis found no evidence of alcohol or illegal substances of any kind.

On September 3, 2004, criminal charges were brought against the plaintiff. On November 29, 2004, the City's prosecuting attorney dismissed all the charges. Criminal charges were reinstituted against the plaintiff on July 20, 2005; the defendant law directors removed the City prosecuting attorney and took over the prosecution for the City. On December 2, 2005, the second criminal charges were also dismissed.

Plaintiff alleges that, between the time of the dismissal of the first charges and the commencement of the second charges, the defendant law directors participated in gathering evidence and/or advised and consulted with the defendant police officers, defendant chief of

2

police, and members of the City Council of the defendant City of Mentor with respect to the investigation. He also alleges that, in furtherance of that investigation and with the advice of the defendant law directors, on April 20, 2005, defendants Miller and Llewellyn attended a meeting with Dr. Martin Mandel who confirmed that plaintiff's behavior on September 2, 2004 was the result of hypoglycemia brought on by diabetes. This information, however, was allegedly concealed from the plaintiff when the law directors prosecuted the second set of criminal charges.

## II. STANDARD FOR JUDGMENT ON THE PLEADINGS

The standard for a judgment on the pleadings under Fed.R.Civ.P. 12(c) is the same as for Rule 12(b)(6). The Court must "construe the complaint in the light most favorable to the nonmoving party, accept the well-pled factual allegations as true, and determine whether the moving party is entitled to judgment as a matter of law." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 539 F.3d 327, 332 (6th Cir. 2007). The Court "need not accept the plaintiff's legal conclusions or unwarranted factual inferences as true." *Id*. at 336.

While Rule 8(a)(2) does not require a complaint to set out detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment]' to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atlantic Corp. v. Twombly*, -- U.S. --, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007). The notice pleading requirements of Rule 8(a)(2) "still require[ ] a 'showing,' rather than a blanket assertion of entitlement to relief." *Id*. at --, 127 S.Ct. at 1965 n. 3.

Accordingly, a complaint "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Lewis*

3

*v. ACB Business Serv., Inc.*, 135 F.3d 389, 406 (6th Cir.1998) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir.1984)).

## III. DISCUSSION

Defendants move for judgment on the pleadings with respect to several of plaintiff's claims and as to several of the defendants. The Court will address each argument in turn.

**A.     City Law Director and City Assistant Law Director -- Absolute Prosecutorial Immunity**

Defendants argue that all of plaintiff's federal and state law claims against defendants Hennig and Szeman are barred by absolute prosecutorial immunity and must, therefore, be dismissed.

A prosecutor is absolutely immune from civil suits for damages for alleged constitutional violations when he has acted within the scope of his prosecutorial duties. *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976) (holding that "in initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983"); *see also* Ohio Rev. Code § 2744.03(A)(7). A prosecutor performing investigative or administrative functions, by contrast, may only assert a qualified immunity defense. *Burns v. Reed*, 500 U.S. 478, 493, 495 (1991) (prosecutor not allowed absolute immunity for advising police in the investigative phase of a criminal case; absolute immunity is aimed at protecting prosecutor's role in judicial proceedings, not for all litigation-inducing conduct).

Applying the "functional approach" approved by the Supreme Court in *Forrester v. White*, 484 U.S. 219, 229 (1988), the Sixth Circuit looks to "the nature of the function performed, not the identity of the actor who performed it." *Ireland v. Tunis*, 113 F.3d 1435, 1446

(6th Cir. 1997). "To distinguish between conduct entitled to absolute immunity and conduct entitled to qualified immunity, 'the critical inquiry is how closely related is the prosecutor's challenged activity to his role as an advocate ultimately associated with the judicial phase of the criminal process.'" *Grant v. Hollenbach*, 870 F.2d 1135, 1138 (6th Cir. 1989) (footnote omitted) (quoting *Joseph v. Patterson*, 795 F.2d 549, 554 (6th Cir. 1986)).

Absolute prosecutorial immunity is not defeated by a showing that a prosecutor acted wrongly or even maliciously. In *Imbler*, for example, the prosecutor was absolutely immune even for knowingly using perjured testimony and suppressing exculpatory material at trial. *Imbler*, 424 U.S. at 427 n.27. The decision to prosecute, "even if malicious and founded in bad faith, is unquestionably advocatory and at the heart of the holding in *Imbler*." *Joseph*, 795 F.2d at 557.

In his complaint, plaintiff alleges that the defendant law directors are liable for damages because, between the dismissal of the first charges and the bringing of the second charges, "they engaged in investigatory vindictive conduct that was unrelated to the judicial function of a prosecutor." (Compl. ¶ 40.)  Plaintiff alleges that they "participated in the preliminary gathering of evidence; and/or they actually advised and/or organized and/or consulted with Defendant police officers, and/or members of City Council for the City of Mentor, and/or Defendant Chief Llewellyn during an investigation and investigatory period which followed the first prosecution of Mr. Coxon." (Compl. ¶ 19.) He further alleges that defendants Miller and Llewellyn met with Dr. Martin Mandel "at the direction, and/or guidance and/or with full knowledge of" the two law directors, and that they or defendant Llewellyn later met with City Council regarding whether to bring the second set of charges, but "intentionally hid the facts regarding the April 20, 2005 meeting with Dr. Mandel." (Compl. ¶¶ 20, 21, 23.)

5

"The line between conduct that is part of a preliminary investigation and conduct that is intimately associated with the judicial phase of a criminal proceeding is difficult to draw in some cases." *Prince v. Hicks*, 198 F.3d 607, 612 (6th Cir. 1999) (citing *Burns v. Reed*, 500 U.S. 478,495 (1991)). "Nevertheless, the approach endorsed by the Supreme Court in *Burns* and *Buckley* [*v. Fitzsimmons,* 509 U.S. 259 (1993)], requires a court to focus on the specific conduct at issue in a case and determine whether a prosecutor was acting as an advocate for the state or whether she was simply engaging in preparatory conduct and performing administrative or investigative functions." *Id*.

Although asserting in a conclusory fashion that the defendant law directors "participated in the preliminary gathering of evidence," the complaint supplies no facts to support this allegation. The entire complaint is actually aimed at challenging the legitimacy of the *fact* that charges were brought against the plaintiff in connection with the traffic accident on September 2, 2004, when there was allegedly evidence that, at the time of the accident, he was suffering from a medical emergency which arguably rendered him incapable of controlling his behavior. The gravamen of the complaint is that charges were brought without probable cause.

Without at least minimal supporting facts, even under the "short and plain statement" requirement of Rule 8, the Court is not required to take as true the simple assertion that the law director and the assistant law director themselves engaged in "preliminary gathering of evidence." The only fact alleged in the complaint that would constitute "gathering of evidence," would be the meeting with Dr. Mandel. There is no allegation that either law director participated in that meeting, although it is alleged that they advised other defendants to do so. There was nothing inherently unconstitutional about meeting with Dr. Mandel as part of an investigation, no matter who might have participated in that meeting or who may have advised it.

6

As properly pointed out in defendants' reply brief (Doc. No. 16), plaintiff is really attempting to use an argument that the defendant law directors engaged in actual investigation as a means of challenging the second prosecution. This "investigatory" act of meeting with Dr. Mandel, the only one alleged, was performed in preparation for prosecution of the case against the plaintiff. The decision to pursue a prosecution is clearly within the protection of absolute prosecutorial immunity, notwithstanding any assertion that the defendant law directors acted in bad faith or somehow withheld information obtained during the meeting with Dr. Mandel.[2]

Therefore, the Court concludes that both defendant Hennig and defendant Szeman enjoy absolute prosecutorial immunity for their roles in both the first and the second prosecutions of the plaintiff, notwithstanding the fact that all charges in both instances were eventually dismissed.[3]

Accordingly, defendants Hennig and Szeman are entitled to dismissal from this case on the ground of absolute prosecutorial immunity.[4]

---

[2] Even if the information from Dr. Mandel is presumed exculpatory, the Sixth Circuit has held that a prosecutor's non-disclosure of exculpatory evidence is subject to absolute immunity. *Spurlock v. Thompson*, 330 F.3d 791, 800 (6th Cir. 2003) (citing *Imbler*).

[3] Although plaintiff alleges throughout the complaint that "the defendants," as opposed to any specific defendant, engaged in the various alleged behaviors, the law director and assistant law director clearly had nothing to do with the facts that transpired on September 2, 2004. Therefore, the complaint cannot be construed to include them in the allegations of assault and battery and/or gross negligence and reckless conduct. Only claims of constitutional violations, abuse of process, malicious prosecution and the like can include these two defendants and, for these claims, they are entitled to immunity.

[4] Prosecutors are also entitled to absolute immunity under state statutory and common law. O.R.C. § 2744.03(A)(7); *Willitzer v. McCloud*, 6 Ohio St.3d 447, 449 (1983) (citing *Imbler*).

**B.      Fourteenth Amendment Claim Under 42 U.S.C. § 1983 (Part of First Claim for Relief)**

Plaintiff's first claim for relief is brought pursuant to § 1983 and alleges that "Defendants' actions [. . .] deprived Mr. Coxon his right to be free from unlawful restraint, right to be free of deprivation of liberty without due process of law, right to be free of unreasonable searches and seizures by the use of force in violation of the Fourth and Fourteenth Amendments of the United States Constitution, as well as Article I § 10 of the Ohio State Constitution and laws and statutes of Ohio." (Compl. ¶ 27.)

Defendants argue that this claim is properly analyzed only under the Fourth Amendment and that, to the extent it attempts to state a Fourteenth Amendment claim, it should be dismissed.

"[W]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Estate of Dietrich v. Burrows*, 167 F.3d 1007, 1013 (6th Cir. 1999) (citing *Albright v. Oliver*, 510 U.S. 266, 273 (1994), quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)).

The Sixth Circuit has recognized that "the right to be free from malicious prosecution was a right clearly established under the Fourth Amendment." *Spurlock v. Satterfield*, 167 F.3d 995, 1006 (1999). Citing *Albright*, the court has stated that "[t]he right must be asserted according to the Fourth Amendment because the Supreme Court [. . .] held that there was no such substantive due process right." *Spurlock*, 167 F.3d at 1007, n.19.

Plaintiff argues, in opposition, that the initiation of the second prosecution was procedurally defective and baseless. However, his complaint makes no such allegation. In fact,

8

the paragraphs in his complaint which he points to in support of his opposition to the motion actually do not allege any procedural defect. Instead they clearly assert that the criminal proceedings were instituted "with malice" and that the "prosecution lacked probable cause." (Compl. ¶¶ 34, 35.) As noted in *Spurlock*, "the requirement of probable cause is one of the cornerstones of Fourth Amendment protection." *Id*.

Accordingly, to the extent plaintiff's first claim for relief attempts to state a Fourteenth Amendment claim, it must be dismissed because the appropriate challenge is brought only under the Fourth Amendment.

## C.      Ohio Constitutional Claim (Part of the First Claim for Relief)

Defendants argue that, to the extent the first claim for relief seeks to state a claim under the Ohio Constitution, it must be dismissed because there is no private right of action under the Ohio Constitution. Plaintiff asserts that defendants have "inadvertently misconstrued" the complaint as bringing a claim under the Ohio Constitution.

Defendants are correct that the Ohio Supreme Court has held that there is no private right of action for damages under the Ohio Constitution. *Provens v. Stark County Board of Mental Retardation & Developmental Disabilities*, 64 Ohio St.3d 252 (1992); *see also Kies v. City of Lima, Ohio*, No. 3:07cv1258, 2007 WL 4287629, *2 (N.D. Ohio Dec. 4, 2007) (applying *Provens* to Art. I, §14).

Accordingly, defendants are entitled to judgment on the pleadings to the extent plaintiff has attempted to set forth any claim under the Ohio Constitution.[5]

---

[5] Plaintiff's assertion that he made no claim under the Ohio Constitution and that defendants have misconstrued the complaint is quite strange given that the complaint clearly states that the defendants have violated his federal constitutional rights (actionable under Section 1983), "as well as Article I § 10 of the Ohio State Constitution and laws and statutes of Ohio." (Compl. ¶ 27.)

**D.      Abuse of Process Claims Against All Defendants (Fourth Claim for Relief)**

In his fourth claim for relief, characterized as an abuse of process claim, plaintiff alleges that the institution of criminal proceedings against him on September 2, 2004 lacked probable cause, was done for an ulterior purpose, was perverted, and was in violation of the Fourth and Fourteenth Amendments.

The Sixth Circuit has not specifically determined whether a claim for abuse of process is a cognizable constitutional claim that can be redressed under § 1983. *See Voyticky v. Village of Timberlake*, 412 F.3d 669, 676 (6th Cir. 2005). "If such a claim is cognizable as a federal constitutional claim, however, the elements necessary to prove it would likely mirror those of state law." *Id*. at 676-77.

Under Ohio law:

> The three elements of the tort of abuse of process are: (1) that a legal proceeding has been set in motion in proper form and with probable cause; (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) that direct damage has resulted from the wrongful use of process.

*Yaklevich v. Kemp, Shaeffer & Rowe Co., L.P.A.*, 68 Ohio St.3d 294 (1994) (Syllabus ¶ 1).

Defendants argue that plaintiff's claim must fail because it does not allege the first element of an abuse of process claim, but, in fact, alleges that the legal proceedings were *without* probable cause.

In opposition to this argument, plaintiff concedes that his complaint states that he was prosecuted without probable cause, but argues that this is not fatal to his claim for abuse of process. As authority for this argument, plaintiff points to *Comfax Corp. v. North American Van Lines, Inc.*, 638 N.E.2d 476, 485 (Ind.Ct.App. 1994), a case decided by the Fifth District Court of

Appeals of Indiana. Of course, Indiana case law is not controlling in Ohio. Under Ohio law, plaintiff's claim for abuse of process fails as a matter of law.[6]

Accordingly, defendants are entitled to dismissal of the fourth claim for relief alleging abuse of process.

## E.    Negligence Claims Against All Defendants (Seventh Claim for Relief)

Defendants argue that, under Ohio Rev. Code § 2744.03(A)(6), as employees of a political subdivision, all of the defendant City Officials are entitled to immunity from plaintiff's state law claims. This statute provides:

> In addition to any immunity or defense referred to in division (A)(7) of this section and in circumstances not covered by that division, the employee is immune from liability unless one of the following applies:
>
> (a)    His acts or omissions were manifestly outside the scope of his employment or official responsibilities;
>
> (b)    His acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;
>
> (c)    Civil liability is expressly imposed upon the employee by a section of the Revised Code. Civil liability shall not be construed to exist under another section of the Revised Code merely because that section imposes a responsibility or mandatory duty upon an employee, because that section provides for a criminal penalty, because of a general authorization in that section that an employee may sue and be sued, or because the section uses the term "shall" in a provision pertaining to an employee.

---

[6] The Court must also comment with respect to an additional argument made by the plaintiff in opposition to defendants' motion. Defendants asserted that plaintiff failed to allege any ulterior purpose for his prosecution. In opposition, plaintiff argues that "the abuse of process claim stated in Plaintiff's complaint addresses the fact that he was prosecuted not to accomplish an outcome which the process was designed to accomplish, but rather to punish him financially." (Opposition at 9.) There is simply no such specific allegation in plaintiff's complaint. Paragraph 38 merely alleges in general terms that plaintiff was prosecuted "for an ulterior purpose[.]" Had plaintiff been able to establish the first element of the claim of abuse of process, this general allegation regarding the second element would have been sufficient to withstand a motion for judgment on the pleadings. However, plaintiff's claim fails as a matter of law on the first element.

Defendants argue that § 2744.03(A)(6)(a) and (c) do not apply and, therefore, they are entitled to immunity from this suit for damages. However, they fail to address subdivision (6)(b).

In this claim, plaintiff alleges in general fashion that "Defendants failed to exercise due care and acted wantonly, recklessly, and with heedless indifference to the safety and constitutional rights of Mr. Coxon, while engaged in police functions and activities." (Compl. ¶ 45.) He further alleges: "Such reckless, wanton, and willful conduct proximately caused Mr. Coxon harm." (Compl. ¶ 46.) Arguably, these allegations are sufficient to withstand a motion for judgment on the pleadings, where § 2744.03(A)(6)(b) removes immunity in cases where a municipal employee's "acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner[.]" Plaintiff does not allege any malicious purpose or bad faith, but ¶¶ 45 and 46 of the complaint could be construed as alleging acts done "in a wanton or reckless manner."

Although Claim 7 cannot withstand a motion for judgment on the pleadings to the extent it attempts to allege any kind of negligence, it does survive to the extent it can be construed as alleging "wanton or reckless" acts by a municipal employee.[7]

Accordingly, the City officials are not entitled to judgment on the pleadings with respect to the seventh claim for relief insofar as it states a claim of "wanton or reckless" acts by a municipal employee.

---

[7] Given the lack of predicate facts contained in Claim 7, the Court is of the view that it is a very thin claim which may not survive a summary judgment motion; however, for purposes of the instant motion, it survives in part.

12

**F.        Section 1985 and State Law Conspiracy Claims (Eighth Claim for Relief)**

Section 1985(3) creates a cause of action for conspiracy to violate civil rights. "A § 1985(3) complaint must 'allege both a conspiracy and some class-based discriminatory animus behind the conspirator's action.'" *Center for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 832 (6th Cir. 2007) (quoting *Newell v. Brown*, 981 F.2d 880, 886 (6th Cir. 1992)). "Further, 'conspiracy claims must be pled with some degree of specificity and . . . vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim.'" *Id*. (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)).

Just as in *Center for Bio-Ethical Reform*, plaintiff has not alleged "that Defendants acted with discriminatory animus based on a constitutionally protected *classification*." *Id*. (emphasis in original) (citing *Dunn v. Tennessee*, 697 F.2d 121, 124 (6th Cir. 1982)).

In addition to lacking the critical allegations of class-based animus, the complaint fails to "set forth specific allegations supporting [the] conspiracy claim, but rather vaguely asserts that Defendants 'conspired.'" *Id*. Plaintiff here also "vaguely asserts" that defendants conspired "[f]or the purpose of depriving Mr. Coxon equal protection under the law[.]" (Compl. ¶ 49.)

Accordingly, the eighth claim for relief fails as a matter of law.[8]

---

[8] Defendants also properly argue that this claim is barred by the intra-corporate immunity rule. The City of Mentor cannot conspire with its own agents. Plaintiff concedes this fact, but argues that an exception applies where individual defendants are named and those defendants act outside the scope of their employment for personal reasons. This argument, however, flies in the face of the complaint which alleges that, "[a]t all times relevant hereto, Defendants acted in the course and within the scope of their employment." (Compl. ¶ 12.)

**G.**    **State Law Claims Against the City**

Defendants argue, correctly, that the City of Mentor enjoys immunity from state law claims for damages under Ohio Rev. Code Chapter 2744, unless any of several exceptions apply. Plaintiff has not even attempted to argue any exception. Plaintiff argues only that the City can be liable under *Monell v. Dept. of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).

*Monell* applies only to the federal claims, not the state claims, notwithstanding plaintiff's unexplained and completely unsupported statement that immunity does not attach where there is an "overlap" of federal and state claims.

Accordingly, the City of Mentor is entitled to judgment on the pleadings with respect to all of plaintiff's state law claims.

**H.**    **Punitive Damage Claims Against the City**

It is well-settled law that under § 1983, a plaintiff may not recover a punitive damages award against a municipality for the alleged bad faith actions of its officials. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). The same is true under Ohio Rev. Code § 2744.05. *See also*, *Ranells v. Cleveland*, 41 Ohio St.2d 1 (1975) Syllabus ¶ 1 ("In the absence of a statute specifically authorizing such recovery, punitive damages cannot be assessed against a municipal corporation.").

Accordingly, the City of Mentor is entitled to dismissal of any punitive damages claim.

14

## III. CONCLUSION

For the reasons set forth above, defendants' motion for partial judgment on the pleadings (Doc. No. 14) is **GRANTED IN PART and DENIED IN PART**.

Defendants Richard A. Hennig and Joseph P. Szeman are dismissed from the lawsuit with prejudice on the grounds of absolute prosecutorial immunity.

All claims for punitive damages are dismissed, in addition to the following claims:

(1)     Fourteenth Amendment claim (part of first claim for relief);

(2)     The malicious prosecution claim (third claim for relief);

(3)     The abuse of process claim (fourth claim for relief);

(4)     The prosecutorial liability claim (fifth claim for relief); and

(5)     The federal and state conspiracy claims (eighth claim for relief).

The following claims survive this motion:

(1)     The Fourth Amendment claim (first claim for relief) against the City of Mentor and defendants Llewellyn, Miller, Shaw, and Croucher;

(2)     The *Monell* claim against the City of Mentor (second claim for relief);

(3)     The assault and battery claim (sixth claim for relief);[9] and

(4)     The wanton/reckless conduct claim (seventh claim for relief).[10]

---

[9] Although it is not clear from the complaint, it would seem that only the officers at the scene could be liable for any assault and battery, not the City and not the Chief of Police; however, the Court reserves judgment on the question for another time.

[10] As with the assault and battery claim, it is difficult to see how any defendant but the officers at the scene could be liable for gross negligence/reckless conduct; however, the Court reserves judgment on the question.

**IT IS SO ORDERED**.


Dated: November 24, 2008

_____
**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

16